UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/30/2022
```

HEATHER DINGMAN,

                         Plaintiff,

     -against-

FUJI JAPANESE STEAKHOUSE SUSHI INC. and
AN H. CHEN, aka ANDY CHEN, in his official and
individual capacities,

                         Defendants.

No. 20-cv-4850 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Heather Dingman ("Plaintiff") commenced this action on June 24, 2020 against her former employer, Fuji Japanese Steakhouse Sushi Inc. ("Fuji") and one of its owners, Mr. An H. Chen (aka, Andy Chen), alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and New York Executive Law § 296 et seq. (hereinafter, "New York State Human Rights Law" or "NYSHRL") in connection with Fuji's failure to promote her to the position of General Manager of the restaurant.  (*See* Complaint, ECF No. 1.)  Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 39.)  For the reasons discussed below, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

    The facts below are taken from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute except where so noted. All rational inferences are drawn in Plaintiff's favor.

***Plaintiff's Role at Fuji***

Plaintiff was hired to work at Fuji as a server in May 2011, when it had just opened. (ECF No. 52 (hereinafter, "Pl.'s 56.1 Counter-Statement") ¶ 1). In 2012, Jill Mattiello ("Mattiello") was hired as a part-time bartender, later became Bar Manager, and was then promoted by Jia Yang (a part owner of Fuji) in 2015 or 2016 as Fuji's General Manager. (Pl.'s 56.1 Counter-Statement ¶ 2.) When she was promoted, Mattiello had children that were around ages 10 and 8. (*Id*. ¶ 5.) Defendant Andy Chen became an owner and manager at Fuji around 2013 (ECF No. 63 (hereinafter, "Echevarria Decl."), Exh. 2 (Chen Dep. Tr. at 17:17–19)).

Mattiello created the shift-lead system around 2014, and Plaintiff was the first person promoted to shift-lead after Mattiello created that system. (Pl.'s 56.1 Counter-Statement ¶ 6.) Mattiello's role as General Manager was to control the staff, coordinate scheduling, maintain a smooth-running shift, and handle customer service issues. (*Id*. ¶ 7.) Plaintiff's role as shift-lead was to make sure that shifts ran smoothly, including reducing customers' waiting time, supervising busboys, and ensuring that people were moving in and out of the restaurant. (*Id*. ¶ 8.) Defendant Chen gave no indication to Mattiello that he was displeased with Plaintiff's performance, and he trusted Plaintiff with handling payroll when he went on vacation. (*Id*. ¶ 13.) Plaintiff frequently worked as shift-lead—from January 1, 2018 to May 20, 2019, Plaintiff was shift-lead on approximately 100 different shifts. (*Id*. ¶ 14.) She also frequently assisted Mattiello in her General Manager responsibilities. (*Id*. ¶ 20.)

In addition to Plaintiff, another employee, Amanda Daston. also worked as shift-lead since around Summer of 2018. (ECF No. 58 (hereinafter, "Def.'s 56.1 Statement") ¶ 10.) By September 2018, Defendant Chen put Daston in charge of employee timecards while he was on vacation, and also advised Mattiello that he was giving Daston his bar record-keeping responsibilities. (*Id*. ¶ 11.)

In October 2018, after Mattiello returned from maternity leave, Mattiello expressed her interest in switching over to a role as Bar Manager when that position became open.  (Pl.'s 56.1 Counter-Statement ¶ 15.) Defendant Chen informed Plaintiff and Mattiello that Plaintiff would take over the role as General Manager if Mattiello were to get the Bar Manager role.  (*Id*. ¶ 15; Wong-Pan Decl., Exh. 8.) However, another person, Jacob Sienkiewicz, was hired for the Bar Manager position, and Mattiello kept her position as General Manager.  (Pl.'s 56.1 Counter-Statement ¶ 17.).

Plaintiff went on maternity leave from about May 20, 2019 to July 29, 2019.  (*Id*. ¶ 27.) Defendant Chen contacted Plaintiff on June 18, 2019, while on maternity leave, to ask her if she can help him do payroll on July 28. (*Id*. ¶ 29; ECF No. 50 ("Wong-Pan Decl."), Exh. 12).   On July 6, 2019, Defendant Chen contacted Plaintiff again to say he needed to talk to her and show her a few things about the biweekly payroll before he left on vacation. (Pl.'s 56.1 Counter-Statement ¶ 29; Wong-Pan Decl., Exh. 12.)

### *Mattiello's Resignation and Failure to Promote Plaintiff as General Manager*

Once Plaintiff returned from maternity leave, she worked 35.25 hours for the biweekly period of July 29, 2019 to August 12, 2019.  (Pl.'s 56.1 Counter-Statement ¶ 30.)[1]  Daston worked 35.34 hours for that same biweekly paid period.  (*Id*. ¶ 31.)[2]

Mattiello resigned from Fuji on August 12, 2019.  (*Id*. ¶ 33.)  Mattiello testified that before she resigned, she recommended Plaintiff and alternatively, two other individuals named Stephanie

---

[1]      While Plaintiff avers that her shorter schedule was intended to be temporary and she was ready to come back full-time as of August 12, 2019, Defendants argue that Plaintiff did not communicate that intention to them during the relevant period.  (ECF No. 57 (hereinafter, "Defs.' Reply to Pl.'s 56.1 counterstatement") ¶¶ 30, 32.)

[2]      Plaintiff alleges that she worked a full-time schedule of 55 to 70 hours biweekly until she went on maternity leave on May 20, 2019.  (Pl.'s 56.1 Counter-Statement ¶ 25.)  Defendants dispute this fact by arguing that the record shows she worked approximately 70 hours in a two week period only twice in the 33 pay stubs she cites, and that her hours averaged about 53.25 hours were pay period.  (Defs.' Reply to Pl's 56.1 Statement, ¶ 25.)  Defendants argue that Daston regularly puts in 90 or more hours per pay period.  (*Id*.) (citing Echevarria Reply Decl., Exh. 2.)

3

and Suzan, to take over her position as General Manager. (Echevarria Decl., Exh. 4 (Mattiello Dep. Tr. at 29:15–19; 30:4–21)). Plaintiff was with Mattiello when the latter approached Defendant Chen to notify that she was resigning, and Plaintiff told Defendant Chen that she was willing to take on Mattiello's position. (Pl.'s 56.1 Counter-Statement ¶ 36.). Defendant Chen stated that he was busy and needed five minutes. (*Id.*) While Dingman was waiting, Mattiello spoke to Defendant Chen at more length, and she told him that Plaintiff would talk to him about the position. (*Id.* ¶ 37.) Shortly after that conversation, Chen texted Daston and requested a quick answer from her on whether she wanted to take over the General Manager position. (Defendants' 56.1 Statement ¶ 77; ECF No. 62 (hereinafter, "Chen Decl.") ¶ 24 and Exh. 4.) Shortly thereafter, Defendant Chen sent a message over the restaurant's scheduling system that stated that Daston (who is childless) was the new General Manager. (Pl.'s 56.1 Counter-Statement ¶ 39.)

Soon after receiving the message, Mattiello asked Chen why Dingman was passed over, and Chen said, "her brain is scrambled from having a baby." (*Id.* ¶ 39; Wong-Pan Decl., Exh. 2 (Mattiello Dep. Tr. at 36:3–12)). Plaintiff also confronted Chen about not getting the General Manager position. (Pl.'s 56.1 Counter-Statement ¶ 40; Wong-Pan Decl., Exh. 1 (Dingman Dep. Tr. at 66:2–12)). Chen responded that Plaintiff was acting crazy and it was because of her baby. (Pl.'s 56.1 Counter-Statement ¶ 41; Wong-Pan Decl., Exh. 1 (Dingman Dep. Tr. 66:2–12)).[3]

On August 14, 2019, Suzan Narvaez, a co-worker, texted Plaintiff that Chen "said you have baby you have no time no more." (Pl.'s 56.1 Counter-Statement ¶ 43; Wong-Pan Decl., Exh. 13; *see also* Wong-Pan Decl, Exh. 9 (Narvaez Dep. Tr. at 27:17–29:18)).

---

[3]     Defendants state that at the time that Plaintiff confronted Defendant Chen about not getting the General Manager position, she was screaming in front of customers and vendors. (Defendants' 56.1 Statement, ¶¶ 73, 74.) Defendants also argue that Chen's comment that "it was because of her baby" was made in reference to Plaintiff's conduct at the moment she confronted Chen about his employment decision, and not in reference to the employment decision itself. (ECF No. 54 (hereinafter, "Reply Br.") at 1 n.1.).

On August 13, 2019, Mattiello texted Jia Yang stating, "[i]f Andy is going to remain in his position you need to make sure he understands the law.  Specifically, discrimination. I care so much about Fuji and it is killing me to watch him treat it like this. He says some really awful things that are one day going to get him into a lot of trouble. I know I already told you about this when I called you but yesterday it was excessively bad.  Heather quit because of it." (Pl.'s 56.1 Counter-Statement ¶ 44; Wong-Pan Decl., Exh. 2 (Mattiello Dep. Tr. at 38:19–39:16), Exh. 6)).   Yang responded: "I feel helpless." (Pl.'s 56.1 Counter-Statement ¶ 45; Wong-Pan Decl., Exh. 6).

On August 14, 2019, after learning that Plaintiff was leaving her job at Fuji, Chen wrote to Plaintiff via text to ask why she would not give two weeks' notice.  Plaintiff responded: "since you need clarification, my final day will be the 23rd. Is that enough notice for someone who wasn't offered the position because my brain is 'scrambled by a baby?'" (*Id*. ¶ 51; ECF No. 51 (hereinafter, "Dingman Aff."), Exh. 3.).  A few minutes later Chen responded: "Thanks for your classification [sic]. Greatly appreciated. Good luck to you. God Bless you and your family." (*Id*. ¶ 52; Dingman Aff., Exh. 3.).  A few minutes after that, Chen texted: "Heather, You please think twice what is going for the past days: you will realize something.  Best regards, Respect and recognition goes to you. Andy." (*Id*. ¶ 52; Dingman Aff., Ex. 3.)  He then added: "If you carefully think twice your will realize that you'd [sic] brain is 'scrambled by a baby'?'" (*Id*.)   Dingman responded: "So are you saying my brain is in fact scrambled by my baby?" (*Id*. ¶ 53; Dingman Aff., Exh. 3.)  Chen wrote: "If you could calm down a bit; have a chance to talk to me; then everything should have worked out very well, but you did not give a chance to talk. Thank you Heather!" (*Id*. ¶ 54; Dingman Aff., Exh. 3.)

Dingman is not aware of any negative reviews on social media about her service at Fuji, and none have been brought to her attention. (*Id*. ¶ 56; Dingman Aff., ¶ 30).

***Plaintiff's Opposition to Discrimination in the Workplace***

There was a regular customer named Donna who tended to use foul language around other customers and staff.  (Pl.'s 56.1 Counter-Statement ¶ 58.)  Most servers refused to serve Donna, so Andy Chen would serve her himself.  (Pl.'s 56.1 Counter-Statement ¶ 60.).  The staff believed that Donna might have a disability.  (Def.'s 56.1 Statement ¶ 48.)

Another regular customer, an African American man named Andre, was banned from Fuji by Defendant Chen after he was accused of cursing at Daston.  (Pl.'s 56.1 Counter-Statement ¶ 62.)

On May 13, 2019, Defendant Chen notified Plaintiff, Mattiello, and the Bar Manager, Sienkiewicz via group text that he was banning Andre from Fuji.  Plaintiff wrote back stating, "Donna, the woman with Tourette's or some kind of illness, is often racist and outwardly horrible to your staff and you do nothing!"  (Pl.'s 56.1 Counter-Statement ¶ 63; Wong-Pan Decl., Exh. 7.) Other employees on that group text chain also commented on the customer's behavior.  (Wong-Pan Decl., Exh. 7)  Defendant Chen responded, "Obvious that this customer Donna is handicapped, let me find out what is the exact legal law for a restaurant dealing with handicapped people . . .").  Later in the chain, Plaintiff stated "there are other situations exactly like this that are not handled. I think what you are doing is completely unfair and uncalled for.  I'm sorry that this situation happened but to ban someone for something that seems so small and trivial is unjustified. We've never had an issue with Andre before, not once. But you don't care. Fine.  Choose to make the wrong decision based on your own thoughts. But you've lost my respect."  (Wong-Pan Decl., Exh. 7.)

***Discrimination Complaint with the New York State Division of Human Rights and EEOC***

Plaintiff filed a discrimination complaint with the New York State Division of Human Rights ("NYSDHR") on August 28, 2019, which was also jointly filed with the Equal Employment Opportunity Commission ("EEOC").  (Pl.'s 56.1 Counter-Statement ¶ 63; Echevarria Decl., Exh. 9; Compl. ¶¶ 5–6.)  On January 31, 2020, NYSDHR concluded that there was probable cause of discrimination based on gender and family status.  (Pl.'s 56.1 Counter-Statement ¶ 69; Wong-Pan Decl., Exh. 16.)   Plaintiff's request that the complaint be administratively dismissed from NYSDHR was granted (Pl.'s 56.1 Counter-Statement ¶ 70; Wong-Pan Decl., Exh. 10).  After the case was administratively dismissed, Defendant requested to reopen the decision.   (Pl.'s 56.1 Counter-Statement ¶ 69.)  As part of that request, on March 24, 2020, Defendants attempted to submit the May 13, 2019 group text conversation to NYSDIR (Pl.'s 56.1 Counter-Statement ¶ 69; Wong-Pan Decl., Exh. 10.)[4]   NYSDHR denied the request to reopen.  (Pl.'s 56.1 Counter-Statement ¶ 63.)

Plaintiff brought the instant action stating that she "has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails.  Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses." (Compl. ¶ 58.)  Plaintiff seeks monetary damages due to psychological injury, mental anguish, and humiliation, compensable damages, and punitive damages against Defendants, both severally and jointly.

STANDARD OF REVIEW

I.      **Summary Judgment Standard**

---

[4]      Defendants state that they raised the May 13, 2019 group text chain to NYSDHR in order to show that Plaintiff did not have the same management style as Defendants, and made statements to undermine Defendants. (Reply Br. at 15.)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; a*ccord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc*., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record.  *Kirkland v. Cablevision Sys*., 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010).  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.  Summary judgment should be

granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll*., 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co*., 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

Plaintiff brings claims for Title VII discrimination and retaliation against Defendant Fuji, and analogous discrimination and retaliation claims under the NYSHRL against both Defendants Fuji and Andy Chen.  Plaintiff also brings an aiding and abetting claim against Defendant Chen under NYSHRL §296(6).  For the reasons discussed below, the Court DENIES Defendants' motion for summary judgment against Plaintiff's discrimination claims under Title VII and NYSHRL, and GRANTS Defendants' summary judgment motion against Plaintiff's retaliation claims under Title VII and the NYSHRL, as well as the NYSHRL aiding and abetting claim against Defendant Chen.

## I.    Title VII Claims

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Courts analyze discrimination claims brought under Title VII using the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Barbini v. First Niagara Bank N.A*., No. 16 CIV.

7887 (NSR), 2022 WL 623184, at *15 (S.D.N.Y. Mar. 3, 2022); *Tubo v. Orange Reg'l Med. Ctr.*, No. 13-CV-1495 NSR, 2015 WL 5945853, at *6 (S.D.N.Y. Oct. 13, 2015), *aff'd*, 690 F. App'x 736 (2d Cir. 2017)

Under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case. 411 U.S. at 802.  To establish a prima facie case of either gender or age discrimination, a plaintiff must demonstrate that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

The plaintiff's burden at this stage is "minimal" or "de minimis." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (describing burden for discrimination claims); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (describing burden for retaliation claims).  However, a plaintiff must establish all four elements of the prima facie case before proceeding with the next step of the *McDonnell Douglas* framework. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–12 (1996) ("As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption[.]'" (citations omitted)).

Once a plaintiff has made a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.  In other words, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a

finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks and emphasis omitted).

Upon the defendant's proffer of a non-discriminatory reason, the presumption of discrimination arising with the prima facie case "drops from the picture," *Weinstock*, 224 F.3d at 42 (citing *Hicks*, 509 U.S. at 510–11), and the "final and ultimate burden" then returns to the plaintiff to demonstrate that defendant's reason is in fact a pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Weinstock*, 224 F.3d at 42. The plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not the discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks omitted) (citation omitted). Alternatively, a plaintiff may meet its final burden by relying on direct or indirect evidence demonstrating that "an impermissible reason was a motivating factor, without proving that the employer's proffered explanation played no role in its conduct." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 81 (2d Cir. 2001) (internal quotations omitted). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock*, 224 F.3d at 42.

In addition, regarding employment retaliation claims, Title VII protects "the filing of formal charges of discrimination . . . as well informal protests of discriminatory employment practices." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). To make out a prima facie case of retaliation, plaintiff must establish "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d

Cir. 2010) (internal quotation marks omitted). "Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (quotation marks omitted).  Courts also apply the *McDonnell Douglas* burden shifting analysis in retaliation claims asserted under Title VII. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.  At the same time, . . . the salutary purposes of summary judgment-avoiding protracted and harassing trials apply no less to discrimination cases than to other areas of litigation." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (quotation marks, citations, and alterations omitted.)  As in any other case, a plaintiff in an employment discrimination or retaliation case "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal citations omitted).

### A.  Employment Discrimination Based on Sex and Gender Stereotypes

Defendants seek to dismiss Plaintiff's claim that she was not promoted to General Manager because she had recently given birth.  Defendants argue that Plaintiff fails under the *McDonnell Douglas* standard for the following reasons: (i) Defendants aver that federal law does not cover familial status discrimination unless it is connected with sex discrimination, and in any event, there is no inference of discrimination in the promotion decision; and (ii) that Defendants had non-discriminatory reasons for not promoting her which are not pretextual.  (*See* ECF No. 59 (hereinafter, "Defs.' Br.") at 1.)

### 1.   Prima Facie Case of Discrimination

The only prima facie element that Defendants challenge in their opening brief is whether Plaintiff demonstrates that "she was within [a] protected class." (*See* Defs.' Br. at 20–21.) *See Liebowitz*, 584 F.3d at 498.  In their reply brief, however, Defendants also appear to argue that the failure to promote Plaintiff did not occur under circumstances giving rise to an inference of discrimination.  (*See* Reply Br. at 3).  Defendants do not contest whether Plaintiff satisfies the other prima facie elements—that (i) she was qualified for the position and that (ii) "she was subject to an adverse employment action. (*See* Defs.' Br. at 20–21.).  Therefore, the Court determines that Defendants concede these elements, and will only focus on whether Plaintiff established that she was within a protected class and that there were circumstances giving rise to an inference of discrimination.

***Plaintiff is Within a Protected Class Under Title VII***

Plaintiff alleges that she was subject to sex stereotyping, as Defendant Chen allegedly failed to give her a promotion because he believed Plaintiff's newborn baby had "scrambled" her brain and that she would not have time for a role as General Manager. (56.1 Response ¶ 56.1; Counter 56.1 ¶¶ 39, 43; Compl. ¶ 50).  Defendants argue that Plaintiff fails to make a prima facie case of discrimination because "Title VII does not include 'gender' or 'familial status' as protected classes."  (Defs.' Br. at 20.).  Defendants further argue that gender and familial status claims "may be brought under federal law only if they can be classified as sex discrimination," and that doing so requires Plaintiff to show that women were treated differently than men at Fuji.  (*Id.*) Defendants further argue that because Plaintiff fails to show a male comparator, and instead alleges that a woman was promoted over her, Plaintiff cannot show sex discrimination.  (*Id.* at 20–21.)

From the outset, the Court notes that Defendants overlook the fact that Plaintiff bases her Title VII discrimination claim based on *unlawful sex-based stereotyping*, not gender and familial status.   (*See* Compl. ¶ 52, 63–65).  It is well-established that Title VII prohibits discrimination based on sex-based stereotypes. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989); *see also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004) ("*Hibbs* makes pellucidly clear, however, that, at least where stereotypes are considered, the notions that mothers are insufficiently devoted to work, and that work and motherhood are incompatible, are properly considered to be, themselves, gender-based.") (*citing Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 123 S.Ct. 1972, 1982, 155 L.Ed.2d 953 (2003)).

The Court also finds that Defendants are incorrect with respect to their argument that Plaintiff must show a male comparator in order to establish her sex discrimination claim.  *See Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 514 (E.D.N.Y. 2018) ("And as with the first stage of *McDonnell Douglas*, [plaintiff] is not required to provide evidence that similarly situated men were treated differently."); *Back*, 365 F.3d at 121 ("Defendants are thus wrong in their contention that [plaintiff] cannot make out a claim that survives summary judgment unless she demonstrates that the defendants treated similarly situated men differently.").  Indeed, courts in the Second Circuit "have held that in determining whether an employee has been discriminated against 'because of such individual's . . . sex,' the courts have consistently emphasized that the ultimate issue is the reasons for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace."  *Id*. (*citing Brown v. Henderso*n, 257 F.3d 246, 252 (2d Cir.2001) (modification in original).

The Court therefore finds that Plaintiff satisfies the prima facie element requiring her to demonstrate that she is part of a protected class.

***Circumstances Giving Rise to An Inference of Discrimination***

In their reply brief, Defendants for the first time also contest that there is no inference of discrimination.  While it is inappropriate to raise arguments for the first time on reply,[5] the Court nonetheless considers the argument and finds that Plaintiff satisfied her burden of establishing an inference of discrimination.

In order to establish an inference of discrimination, Plaintiff points to comments made by Defendant Chen directly to Plaintiff and Mattiello that create the inference that Plaintiff's did not get the General Manager position because Defendant Chen believed her brain was "scrambled by her baby."   Plaintiff points to the following: (i) Mattiello testified in her deposition that that when she asked Chen about Plaintiff getting the promotion, "his exact words were, '[h]er brain is scrambled from having a baby.'"  (Mattiello Dep. Tr. at 26:2–12; Pl's 56.1 Counterstatement, ¶ 39); (ii) Plaintiff's testimony at her deposition that when she confronted Defendant Chen for being passed over for the promotion, Chen responded, "You're acting crazy and it's because of your baby essentially."  (Dingman Dep. Tr. at 65:22–66:12); (iii) Plaintiff's texts with Defendant Chen regarding her two-weeks' notice, and his comment that "If you carefully think twice your will realize that you'd [sic] brain is 'scrambled by a baby'?", to which Plaintiff responded, "So are you saying my brain is in fact scrambled by my baby?"  (Chen Decl., Exh. 3.); and (iv) statements from Suzanne Narvaez, a co-worker, who testified in her deposition that she witnessed Defendant Chen saying about Plaintiff, "you have baby you have no time no more" [sic]."  (Navarez Dep. Tr. at 27:17–16; 29:15–18) (Navarez testifying that she believed Chen made that comment after she

---

[5]        "Generally, a court [does] not consider issues raised in a reply brief for the first time because if a [party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it." *Sacchi v. Verizon Online LLC*, No. 14-CV-423 RA, 2015 WL 1729796, at *1 (S.D.N.Y. Apr. 14, 2015) (citation and internal quotation omitted).

questioned him about the manager position).  While Defendants call into question the credibility of each of these statements, the Court leaves these credibility issues for a jury to decide.  *See Barbini*, 2022 WL 623184, at *19; *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

Defendants also state, without elaborating further, that these comments are inadmissible hearsay.  (Defs.' Br. at 23.).   The Court will not consider inadmissible hearsay evidence on a summary judgment motion. *See Underkofler v. Cmty. Health Care Plan, Inc.*, 225 F.3d 646 (2d Cir.2000) (holding that the district court "properly rejected inadmissible hearsay in the form of an affidavit" containing hearsay statements); *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 337 (S.D.N.Y. 2020) ("Statements, to be considered properly on a motion for summary judgment, must be admissible if testified to or otherwise introduced at trial").  Here. however, the statements fall under the party-opponent exemption.  *See* Fed. R. Evid. 801(d)(2)(D). Under the party-opponent exemption, a statement is not inadmissible hearsay if it was "made by the party's agent or employee within the scope of that relationship and while it existed." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 79 (2d Cir. 2016) (citing Fed. R. Evid. 801(d)(2)(D)).  Because the purported statements were made by Defendant Chen in his employer scope, these statements are not inadmissible hearsay.

Defendants also attempt to argue that the statements made by Defendant Chen were merely "stray remarks" because "he didn't say: this is why I didn't promote you; or: I didn't give you the job because your brain is fried by your baby, etc."  (Reply Br. at 3.)   However, this argument is bellied by the evidence that Plaintiff offers, and in any event, remarks that were made by decision makers and that appear to be made in connection with the decision process are not "stray remarks."

*See, c.f., Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.")).

Defendants also argue that there is no inference of discrimination because Fuji generally promoted a family-friendly environment where other young mothers have held management positions. (Reply Br. at 3.)  However, this does not overcome the evidence that Plaintiff points to that provides sufficient inference that discrimination played a part in why she specifically was not promoted.

Therefore, the Court finds that Plaintiff has made a prima facie case of discrimination.

### 2. Defendants' Proffered Non-Discriminatory Reasons

Under the *McDonnell Douglas* burden-shifting framework, after plaintiffs establish a prima facie case of discrimination, defendants can articulate a non-discriminatory reason for their employment action. *Cooper v. Connecticut Public Defenders Office*, 280 Fed. Appx. 24, *25 (2d. Cir. 2008).  At this stage of the *McDonnell Douglas* standard, the Court need not assess the credibility of the evidence proffered; it must decide whether defendants have "introduced evidence that, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason. *See Lyons v. New York, Div. of Police*, No. 15 CIV. 3669 (NSR), 2020 WL 2857157, at *10 (S.D.N.Y. June 2, 2020), *on reconsideration in part sub nom. Lyons v. New York*, No. 15 CIV. 3669 (NSR), 2021 WL 1226957 (S.D.N.Y. Mar. 31, 2021).  Once defendants articulate a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the alleged reason for the adverse employment decision is pretextual. *Cooper*, 280 Fed. App'x. at *25.

Defendants articulate multiple reasons why Plaintiff was not promoted, pointing to deposition testimony, pay stubs, text messages, and affidavits.  With respect to their decision to promote Daston (who happens to be childless) instead of Plaintiff, Defendants aver that: (i) Daston was a qualified candidate; (ii) she got along better with Defendant Chen and Chen preferred Daston's management style; and (iii) Daston worked longer hours on average than Plaintiff.  (Defs. Br. at 22–23; Reply Br. at 8–10).  In addition, Defendants state that Plaintiff was disrespectful towards customers, showed contempt towards Defendant Chen, and that Plaintiff never asked Chen for the position yet assumed that she would be considered.  (Defs.' Br. at 22–23.)

As Defendants have proffered nondiscriminatory reasons for not promoting Plaintiff, the Court deems that Defendants have satisfied their burden.

### 3.   Plaintiff's Showing that Proffered Reasons Are Pretextual

The final step in the *McDonnell Douglas* burden-shifting analysis is to assess whether Plaintiff successfully shows evidence that the preferred reasons are pretextual.  The question is whether there is sufficient evidence to permit a juror to infer that the defendant's employment decision was "more likely than not" based on discrimination.  *See Terry*, 336 F.3d at 138. "[U]nless the defendants' proffered nondiscriminatory reason is dispositive and forecloses any issue of material fact, summary judgment is inappropriate."  *Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 135 (2d Cir.2000) (citation omitted); *see also Holtz*, 258 F.3d at 79 (noting that the issue of pretext "is ordinarily for the jury to decide at trial rather than for the court to determine on a motion for summary judgment").  In addition, "[t]o defeat summary judgment, 'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor

18

was at least one of the 'motivating' factors.'" *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 160 (E.D.N.Y. 2011) (citing *Back*, 365 F.3d at 123).

Here Plaintiff argues that the record contains sufficient evidence from which a factfinder could conclude that the reasons Defendants proffer for not promoting Plaintiff to General Manager are pretextual.  (*See* Pl.'s Opp. at 19.)  For the reasons stated below, the Court agrees that Plaintiff has met her burden, and therefore, denies summary judgment on her Title VII discrimination claim.

First, while Defendants indicate that a reason that Plaintiff was not promoted was because she was purportedly rude to customers, Plaintiff has poked sufficient holes in that argument. Defendant Chen only vaguely points to Plaintiff's failure to address a customer complaint about dry chicken, without providing further details of the event. (*See* Echevarria Decl., Exh. 2 (Chen Dep. Tr. at 165:6–19)).  Second, while Defendant Chen stated in his deposition that Plaintiff's attitude is not aligned with the company philosophy (*Id*. at 166:2–3), and that had customers complained about Plaintiff, (*Id*. at 166:19–25), Defendant Chen failed to give any specific examples.  In addition, nothing in the record shows evidence of such complaints, and Plaintiff, Mattiello, and Sienkiewicz testified that they have not heard of customer complaints against Plaintiff.  (*See* Wong-Pan Decl., Exh. 2 (Mattiello Dep. Tr. at 19:2-14); Exh. 5 (Sienkiewicz Dep. Tr. at 123:4-19); Dingman Aff., ¶ 26.).

Second, as Plaintiff points out, Defendants' additional reason that they did not promote Plaintiff because of her "hot temper" are bellied by Defendant Chen's inability to provide examples, as he stated in his deposition, "I didn't record it. If you insist [on] the question, I have to make up something." (Echevarria Decl., Exh. 2 (Chen Dep. Tr. at 168:5–7)).  The only example Defendant Chen provided was Plaintiff's yelling when she confronted him on August 12, 2019

*after* she did not get the promotion, which cannot form the basis in explaining why Plaintiff was not promoted. (*See id*. at 169:4–7.)

Third, while Defendant states that Plaintiff was passed over for a promotion due to her management style, Plaintiff provides evidence showing that Defendant Chen relied on Plaintiff on tasks befit for a General Manager, including Chen asking her to handle payroll for the restaurant (Dingman Aff., Exh. 3). In addition, Defendant Chen previously offered Plaintiff the General Manager role in October 2018. (Wong-Pan Decl., Exh. 8). Therefore, Plaintiff has sufficiently showed that Defendant's explanation regarding her management style could be found to be pretextual by a reasonable fact finder.

Fourth, Plaintiff avers, and the Court agrees, that there is a genuine dispute of material fact regarding whether Plaintiff was working enough hours per week to be considered for the General Manager position. While Defendant Chen argues Plaintiff was not working enough hours (Chen Decl., ¶ 8), Plaintiff's testimony and paystubs indicate that she worked full-time regularly prior to her maternity leave. (Pl.'s Counter-Statement 56.1 ¶¶ 25, 26; Dingman Aff., ¶¶ 13, 14; (ECF No. 55) (hereinafter, "Echevarria Reply Decl."), Exhs. 1 and 2). In addition, Plaintiff and Daston worked a similar number of hours during the two-week period after she returned from maternity leave. (Pl.'s 56.1 Counter-Statement ¶¶ 30, 31; Dingman Aff., ¶¶ 16, 20, Exhs. 2 and 4).

Fifth, regarding Defendant's argument that Plaintiff never informed Chen that she was interested in the General Manager position, Plaintiff provides sufficient evidence to create a genuine question of fact as to that issue. For instance, while Defendants claim that Plaintiff never told Chen that she wanted to be considered for the position (Defs.' 56.1 Statement, ¶ 72), Plaintiff provides testimony from Mattiello that she recommended Plaintiff as her replacement (Counter 56.1 ¶¶ 33, 35; Wong-Pan, Exh. 2 (Mattiello Dep. Tr. at 30:4–32:24)) and Plaintiff purportedly

told Chen "I'm willing to take on the position. I'm ready to step into it."  (Counter 56.1 ¶ 36;
Wong-Pan, Exh. 1 (Dingman Dep. Tr. at 64:8–16)).

Lastly, as described above, Defendant Chen's explicit comments that he did not promote
Plaintiff to General Manager because her "brain was scrambled by her baby" provides a strong
showing that discriminatory motive factored into the adverse employment decision, and a
reasonable fact finder could find that sex-stereotyping played a role in the employment decision.
*See supra*; *Tubo.*, 2015 WL 5945853, at \*10 (pretext for discrimination. . . may be demonstrated
either by . . .  reliance on the evidence comprising the prima facie case, without more.") (citing
*Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*,
198 F.3d 68, 72 (2d Cir.1999)).

Therefore, Plaintiff's Title VII discrimination claim survives summary judgment.

### B.  Title VII Retaliation

Plaintiff bases her Title VII retaliation claim against Defendant Fuji on its failure to
promote because she had complained about Andy Chen's lack of response to a customer's racist
behavior at the restaurant.  (*See* ECF No. 48 (hereinafter "Pl.'s Opp.") at 21.)  Defendant Fuji
argues that Plaintiff did not bring her retaliation claim before the New York State Division of
Human Rights ("NYSDHR") or the Equal Employment Opportunity Commission ("EEOC"), and
therefore her federal retaliation claim is barred.  (Defs.' Br. at 21.)  Plaintiff acknowledges that her
Title VII retaliation claim was not asserted before the EEOC or NYSDHR.  (Pl.'s Opp. at 20.)
However, Plaintiff argues that her claim is "reasonably related" to those that were filed with the
agency, and therefore it should not be dismissed for lack of exhaustion.  (*Id*. at 20–21.)  The Court
agrees with Defendants that Plaintiff failed to exhaust her retaliation claim, and therefore the Court
GRANTS summary judgment on the Title VII retaliation claim.

Generally, to bring a Title VII discrimination claim in federal district court, plaintiffs must first exhaust their administrative remedies by "filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz,* 258 F.3d at 82–83 (quoting 42 U.S.C. § 2000e–5(e)); *see also Duplan v. City of New York*, 888 F.3d 612, 614 (2d Cir. 2018) ("Exhaustion is an essential element of Title VII's statutory scheme.") (internal quotations omitted).

"[C]laims that were not asserted before the EEOC [or an appropriate State or local agency] may [still] be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane*, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that 'which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id*. (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (providing that claim is reasonably related when "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised.").

In determining whether a claim is "reasonably related" to the EEOC charge, "the focus should be on the factual allegations made in the [EEOC] charge itself . . ." and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)).

Here, the Court finds that Plaintiff's Title VII retaliation claim is not reasonably related to the EEOC and NYSDHR charge. Plaintiff's NYSDHR and EEOC charge pertained to

employment discrimination based on familial status and sex.  (ECF No. 63, Exh. 9; ECF No. 50, Exh.15; *see also* Complaint 5–6.)  Plaintiff's retaliation claim, however, is based on a failure to promote for having opposed racial discrimination in the workplace—in other words, the retaliation claim is based on a completely different theory of discrimination as the one that Plaintiff did assert to the NYSDHR and EEOC.  *See Shah v. N.Y.S. Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) ("The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge."); *Melendez v. Cnty. of Westchester*, No. 17-CV-9637 (NSR), 2019 WL 251731, at *4 (S.D.N.Y. Jan. 16, 2019), *on reconsideration*, No. 17-CV-9637 (NSR), 2019 WL 297519 (S.D.N.Y. Jan. 23, 2019) (dismissed retaliation claim when Plaintiff failed to raise in EEOC charge).  Therefore, Plaintiff's Title VII retaliation claim must be dismissed for failure to exhaust.

## II.   N.Y. Executive Law § 296 Claims

### A.  Employment Discrimination

Plaintiff also raises gender and familial status discrimination under N.Y. Executive Law § 296.  Defendants concede that gender and familial status discrimination could be a basis for bringing a claim under N.Y. Executive Law § 296.  (Defs.' Br. at 20.)  Because it is well established that discrimination claims under the NYSHRL are governed by the same standards as federal claims under Title VII, the same analysis above applies here.  *See supra*; *see also Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) ("Both Title VII and NYSHRL discrimination claims are governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*"); *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims.").  Therefore,

the Court denies Defendants' motion for summary judgment as to Plaintiff's state law employment discrimination claim.

### B.  Retaliation

Plaintiff brings a state law employment retaliation claim analogous to her Title VII retaliation claim.  (Compl. ¶¶ 82–89.)  As discussed above, the Court dismisses Plaintiff's Title VII retaliation claim for lack of exhaustion.  Regarding Plaintiff's state law retaliation claim, "unlike Title VII, the NYSHRL ... do[es] not require exhaustion of administrative remedies" prior to commencing an equivalent claim."  *Manos v. Geissler*, 377 F. Supp. 2d 422, 428 (S.D.N.Y. 2005) (citing *Lumhoo v. Home Depot USA, Inc*., 229 F. Supp. 2d 121, 136 n. 13 (E.D.N.Y. 2002)).  The Court therefore will assess Plaintiff's state law retaliation claim on its merits.

To establish retaliation under the NYSHRL, Plaintiff must establish the following prima facie factors: (i) that she engaged in a protected activity; (ii) that her employer was aware of the activity; (iii) that she suffered a materially adverse action; and (iv) that there is a causal connection between the protected activity and the adverse action.  *See Domingues v. Barton Chevrolet Cadillac*, 2021 WL 637016, *8 (S.D.N.Y. 2021).

Plaintiff claims that she was not promoted because on May 13, 2019, three months prior to the promotion decision, she had sent Defendant Chen a text message over a group text chain (that included other co-workers) complaining that a customer made racial slurs against the staff.  (*See* Pl.'s Opp. at 20–22; Chen Decl., Exh 9.)  In that text message, Defendant Chen informed his staff that the restaurant planned to ban an African American customer for calling a female employee a slur, and Plaintiff protested the decision and stated to Defendant Chen, "Donna (the woman with Tourette's or some kind of illness) is often racist and outwardly horrible to your staff and you do [n]othing!"  (Chen Decl., Exh 9).

Defendants argue that Plaintiff's state retaliation claim fails because the group text message does not constitute a protected activity, that there is no causal between the text message on May 13, 2019 and the promotion on August 12, 2019, and that even though the customer used racial slurs, Plaintiff acknowledges that the customer had Tourette's Syndrome, and therefore fails to show racial animus motivating the customer's actions.  (Defs.' Br. at 24–25.).

From the outset, Plaintiff fails to articulate how her complaint made in the group text constitutes protected activity, particularly because she complained about racist behavior coming from a customer, not her employer.  "[A] complaint that a non-employee discriminated against a plaintiff is similarly not a complaint about an employment practice unless the plaintiff provides some evidence to impute the discrimination by the non-employee to the employer.  In other words, to fall within Title VII's protection, an employee's 'opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual.'"  *See Melendez v. Cnty. of Westchester*, No. 17-CV-9637 (NSR), 2021 WL 467085, at *10 (S.D.N.Y. Feb. 8, 2021) (*citing Braham v. N.Y. Unified Court System*, No. 94 Civ. 2193, 1998 WL 107117, at *3 (S.D.N.Y. Mar. 11, 1998) (quoting Silver v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978)); *see also Scott-Robinson v. City of New York*, 15-CV-9703 (NRB), 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016) (A protected activity is any "action taken to protest or oppose statutorily prohibited discrimination.").  Even though Defendants argued that Plaintiff's text message is not a protected activity, Plaintiff offered no argument to the contrary, and instead takes it as a given that her complaints about a customer's racist remarks is a protected activity.[6]  (*See* Pl.'s Opp. at 22.)  Therefore, the Court finds that Plaintiff failed to satisfy her prima facie burden.

---

[6]     The fact that Plaintiff's complaint was made in a group text is not an issue, as "[t]he complaint can be informal—an employee does not need to lodge a formal complaint of discrimination." *Bowen–Hooks v. City of New York*, 13 F.Supp.3d 179 (E.D.N.Y.2014) (analyzing Title VII); *see also Gorbea v. Verizon N.Y., Inc.*, No. 11–CV–3758 (KAM)(LB), 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014) ("Requests for disability accommodation and

Plaintiff also fails to establish a causal connection between her complaining about Defendant's Chen lack of response towards a customer's racist behavior and his failure to promote her. Plaintiff points to Defendant Chen's deposition to show that he denied knowledge of the customer's racist statement (*see* Chen Dep. Tr. at 126:1-127:2). However, this argument is irrelevant as to whether Defendant Chen failed to promote Plaintiff because she complained about a customer's racist language. Plaintiff also claims that Defendant Chen was hostile towards Plaintiff for making her complaint, but Plaintiff offers nothing on the record showing hostility beyond pointing out that Chen testified in his deposition that he believed Plaintiff was lying about the customer's racist remarks. (Pl.'s Opp. at 22.) Plaintiff also attempts to rely on the temporary proximity (three months) between when Plaintiff complained about the customer's racist behavior and the promotion decision. However, without more, Plaintiff fails to establish a causal connection between the two events. *See Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at \*21, n.13 (S.D.N.Y. Sept. 9, 2021) (regarding temporary proximity, the Second Circuit has a "flexible approach [which] has allowed courts to exercise . . . judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.") (citations and internal quotations omitted).

Therefore, the Court grants summary judgment against Plaintiff's state retaliation claim.

**C. Aiding and Abetting Claim Against Andy Chen**

In addition to holding Defendant Chen individually liable for state law employment discrimination, Plaintiff also seeks to hold him liable under N.Y. Exec. Law § 296(6) for aiding and abetting Fuji's purported discrimination. The "NYSHRL allows for individual liability under two theories: (1) if the defendant has an ownership interest in the employer or has the authority to

---

complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities.").

hire and fire employees, N.Y. Exec. Law § 296(1), and (2) if the defendant was aiding and abetting the unlawful discriminatory acts of others, *id.* § 296(6)." *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *34 (E.D.N.Y. Sept. 24, 2014) (internal quotation marks omitted). Here, it is undisputed that Chen was a part owner of Fuji and that he had authority to hire, fire, and promote employees. (*See* Defs.' 56.1 Statement, ¶¶ 5–6.)  Therefore, the Court finds that Defendant Chen could at least be held individually liable under Section 296(1) of the NYSHRL.

However, the Court dismisses Plaintiff's aiding and abetting claim against Defendant Chen under N.Y. Exec. Law § 296(6).  Plaintiff offers no factual support or allegations that Defendant Chen assisted in other individual's discriminatory conduct, and Plaintiff's discrimination claim against Fuji is based solely on Chen's conduct as part-owner of the restaurant.  As Defendants point out, Defendant Chen cannot aid and abet his own alleged conduct. (Defs.' Br. at 21.)  *See Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019) ("the Court knows of no case where an individual has been held liable for aiding and abetting under the NYSHRL where that individual is an employer under 296(1) and no others, including the corporate entity, are alleged to be in concert with the individual"); *Malanga v. NYU Langone Med. Ctr.*, 14cv9681, 2015 WL 7019819, at *5 n.3 (S.D.N.Y. Nov. 12, 2015) (stating where a single defendant is accused of discrimination, "[u]nder these circumstances, [c]ourts have been reluctant to impose individual liability for aiding and abetting under the NYSHRL") (internal quotation marks and citation omitted); *Malena v. Victoria's Secret Direct, LLC*, 886 F.Supp.2d 349, 367 (S.D.N.Y. 2012) ("Under the NYSHRL, an individual may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating that law.") (internal quotation marks, citation, and alterations omitted).

Therefore, the Court grants summary judgment against Plaintiff's aiding and abetting claim and dismisses that claim.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED in PART.  The Court DENIES Defendants' motion for summary judgment against Plaintiff's discrimination claims under Title VII and the NYSHRL, and GRANTS Defendants' summary judgment motion against Plaintiff's retaliation claims under Title VII and the NYSHRL, and Plaintiff's NYSHRL aiding and abetting claim against Defendant Chen

The parties are directed to appear for a telephonic pre-trial conference on October 27, 2022, at 12:00 p.m. To access the telephonic pre-trial conference, please follow these instructions: (1) dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.   The Clerk of Court is respectfully directed to terminate the motion at ECF No. 39.

Dated:    September 30, 2022                                     SO ORDERED:
          White Plains, New York

                                                        _____
                                                            NELSON S. ROMÁN
                                                        United States District Judge