UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/2023
```

HEATHER DINGMAN,

                              Plaintiff,

   -against-

FUJI JAPANESE STEAKHOUSE SUSHI INC.

                            Defendant.

No. 20-CV-4850 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Heather Dingman ("Plaintiff") brings this action against her former employer, Fuji Japanese Steakhouse Sushi Inc. ("Defendant" or "FJSS"), alleging gender and familial status discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, *et seq.* ("Complaint", ECF No. 1.)  Plaintiff alleges Defendant unlawfully passed Plaintiff over for a promotion because of her gender and because she was a mother, eventually leading Plaintiff to quit her position. (Complaint at ¶¶ 54-55).  A trial is currently scheduled to begin on November 28, 2023 (Minute Entry dated September 8, 2023.)  Before the Court are Plaintiff and Defendant's respective motions *in limine* (ECF Nos. 74, 79).

      Plaintiff moved *in limine* to preclude Defendant from: (1) introducing at trial any testimony and documents regarding unemployment benefits received by Plaintiff following her resignation from FJSS; (2) introducing at trial Defendant's proposed Exhibit W; and (3) objecting to questions about conversations held between Defendant's counsel and FJSS employees or former employees based on attorney-client privilege. (ECF No. 76).

1

Defendant moved *in limine* to request orders: (1) that evidence of Plaintiff's unemployment benefits during the years 2020 and 2021 be disclosed to jury and presenting the jury the option of deducting employment earnings from any potential damages award and (2) precluding Plaintiff from introducing certain categories of evidence. (ECF No. 81).

For the following reasons, Plaintiff's motion is DENIED in its entirety. Defendant's motion is GRANTED, in part, and DENIED, in part.

## BACKGROUND

The Court assumes familiarity with the facts and allegations in this case, as well as the procedural background of this case. *See, e.g.*, *Dingman v. Fuji Japanese Steakhouse Sushi, Inc., et al*, No. 20-cv-4850, 2022 WL 4650860, Dkt. No. 66 (S.D.N.Y. September 30, 2020) (addressing Defendants' motion for summary judgment). Additional factual information relevant to the parties' motions *in limine* is addressed in the applicable section of the Court's discussion.

On October 20, 2023, Plaintiff filed a motion *in limine* (ECF No. 74), along with a Memorandum of Law in Support ("Pltf. Mem.", ECF No. 76) and a Declaration in Support ("Pltf. Decl. Supp.", ECF No. 77). On October 27, 2023, Defendant filed an opposition ("Def. Opp.," ECF No. 85), along with a Declaration in Support of Opposition (ECF No. 84). On November 2, 2023, Plaintiff filed a reply in support of their motion. ("Pltf. Reply," ECF No. 88.)

Defendant filed its own motion *in limine* (ECF No. 79) on October 26, 2023, along with a Memorandum of Law in Support ("Def. Mem.", ECF No. 80) and a Declaration in Support ("Def. Decl. Supp.", ECF No. 81). Plaintiff filed an opposition ("Pltf. Opp.", ECF No. 82), along with a Declaration in Support of Opposition (ECF No. 83), on October 27, 2023. On November 11, 2023, Defendant filed a reply in support of its motion (ECF No. 87), accompanied by a Reply Declaration in Support of Motion (ECF No. 86).

## LEGAL STANDARDS

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

### I.  Plaintiff's Unemployment Benefits

Plaintiff seeks to exclude testimony and evidence of unemployment benefits received by Plaintiff, including portions of Defendant's Exhibits K, L, and Z. (Pltf. Mem. at 2). Alternatively, if such testimony and evidence were introduced, Plaintiff requests that the unemployment benefits earned from March 23 through June 29, 2020 not be disclosed or included in Defendant's Exhibit Z because Plaintiff is not claiming backpay for that period. (*Id*. at 3-4; *see also*, Pltf. Decl. Supp., Ex 4). Plaintiff argues evidence of unemployment benefits would prejudice the jury against Plaintiff and could lead the jury to "improperly reduce her backpay award . . ." based on those unemployment benefits. (*Id*. at 3).

Defendant seeks to admit such evidence, as its position is that the unemployment benefits Plaintiff received enabled her to not seek employment but instead stay at home caring for her child and to attend nursing school. (Def. Mem. at 2). Further, Defendant claims that such evidence is necessary for its defense that Plaintiff failed to mitigate damages and that "the jury should be able to consider whether equity requires Plaintiff not be unjustly enriched by a double recovery of lost wages." (*Id*.).

If a court finds that a defendant intentionally engaged in an unlawful employment practice, a court may, among other things, require the defendant pay the plaintiff back pay. 42 U.S.C. § 2000e-5(g)(1). Back pay is to be reduced by "[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against . . . ." *Id*.

Even so, "the decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court." *Ramey v. District 141, Intern.*

4

*Ass'n of Machinists and Aerospace Workers*, 362 Fed. App'x 212, 217 (2d Cir. 2010) (citing *Dailey v. Societe Generale*, 108 F.3d 451, 460 (2d Cir. 1997)).

Plaintiff's concerns regarding the prejudicial effect of including her unemployment benefits is well-founded. Accordingly, the Court preliminarily holds that Plaintiff's unemployment benefit records may not be presented to the jury. In exercising its discretion, however, the Court holds that, if an award of damages is made at trial, Plaintiff's unemployment benefits will be deducted from any such award, excepting those payments made between March 23 and June 29, 2020.

## II.  Exclusion of Defendant's Proposed Exhibit W

In her moving papers, Plaintiff sought to exclude Defendant's proposed Exhibit W. (Pltf. Mem. at 4). Plaintiff advised the Court, however, via email, dated November 6, 2023 at 10:57am, that she has withdrawn her objection to this exhibit after being provided a replacement exhibit by Defendant.

As such, Plaintiff's request to exclude Defendant's proposed Exhibit W is DENIED as moot.

## III.  The Admissibility of Conversations Between Defendant's Counsel and FJSS Employees

Plaintiff requests a determination as to whether conversations between FJSS employees and former employees and Defendant's counsel prior to, and during, deposition sessions are admissible, and, if so, to preclude objections to those questions premised on attorney-client privilege. (Pltf. Mem. at 4). Defendant asserts that either attorney-client or attorney work product privilege attaches, and it will only assert those privileges, with respect to only two current employees, Susan Narvaez and Amanda Daston. (Def. Opp. at 2-3).

Plaintiff attempts to rely on *Niesig v. Team I* for the proposition that when a corporation is a party, those individuals included in the definition of "party" consist of "corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of liability . . . ." *Niesig v. Team I*, 558 N.E.2d 1030, 1035 (N.Y. 1990); (*see also* Pltf. Mem. at 5). That is, in Plaintiff's view, privilege would only attach to a corporation's "control group". Plaintiff fails to contend, however, with the fact that *Niesig* related to Disciplinary Rule 7-104(a)(1) of the Code of Professional Responsibility prohibiting attorneys from speaking to a "party" known to have counsel, not to claims of privilege. *See Niesig*, 558 N.E.2d at 1031.

Defendant's claim of privilege with respect to current employees is better founded, beginning with its reliance on *Upjohn Co. v. United States*. (*See* Def. Opp. at 3). In *Upjohn*, the Supreme Court held that low-level employees whose "communications at issue were made . . . to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel . . ." were protected by attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981); *see also In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp.3d 521, 527 (S.D.N.Y 2015). Moreover, *Upjohn* explicitly rejected the "control group" test advocated by Plaintiff. *Upjohn Co.*, 449 U.S. at 392-93. Defendant also points to two additional cases for support, with mixed results. In the first, Defendant describes the relevant employee as a "former editor and writer at Marvel Enterprises (i.e., not an officer of the company) . . . ." (Def. Opp. at 3). In fact, that former employee served, "for some time, [as] editor-in-chief[,]" which is undoubtedly a position of significant authority and policymaking power within the organization. *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08-1533 (BSJ) (JCF), 2011 WL2020586, at *1 (S.D.N.Y. May 20, 2011). Defendant fares better with its second citation,

wherein the court held, first, that the attorney-client relationship attaches to corporate employees regardless of whether the employees ask for representation and, second, that deposition preparation between employees of the New York City Departments of Investigation and Health and counsel for the departments was protected by privilege. *Coleman v. City of New York*, No. 98-8761 (LMM) (AJP), 199 WL493388, at *1-2 (S.D.N.Y. July 8, 1999).

Defendant's position is also bolstered by the Second Circuit, which has held that the *Upjohn* decision protects "communications[,] in the case of a corporation, [between its] agents to [its] lawyers in order to foster 'full disclosure' [and that] lawyers . . . must be able to seek information from employees at every level of the corporate entity concerning matters which may entail legal problems for the corporation." *In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir. 1982).

Here, as in *John Doe Corp.*, Defendant's counsel sought information from its employees relating to a pending legal issue. *Id.* Further, and like *Coleman*, current employees[1] received deposition preparation from their corporate employer's counsel. *Coleman*, 199 WL493388, at *1-2. Finally, Defendant's counsel sought information from a current employee that "entail[ed a] legal problem[] for the corporation." *In re John Doe Corp.*, 675 F.2d at 488. As such, the Court preliminarily holds that discussions held prior to, and during, deposition sessions between Susan Narvaez and Amanda Daston and FJSS' counsel are protected by attorney-client privilege and are not admissible.

---

[1] In her reply, Plaintiff seems to imply Susan Narvaez is a former employee. (*See* Pltf. Reply at 3). That implication is not present in Plaintiff's initial memorandum in support. (*See* Pltf. Mem. at 4-5). Defendant describes Narvaez as a "current employee" (Def. Opp. at 2). Indeed, the deposition transcript provided by Plaintiff indicates that Narvaez was still employed at the time of her deposition. (*See* Plft. Dec. Supp., Ex. 6 (including an exchange where Narvaez indicated she was aware her job at FJSS was not in jeopardy for testifying)). Accordingly, without evidence to the contrary, the Court presumes that Narvaez is a current employee of FJSS.

### IV.     Defendant's Request to Preclude Certain Categories of Evidence

Defendant seeks to preclude Plaintiff from introducing: (1) testimony regarding a dispute memorialized in a text message exchange that Plaintiff claims was evidence of racial discrimination or that it was a protected activity that could not be the basis of an adverse employment action; (2) a screenshot of a text message exchange between two non-parties that was sent in a separate text message to Plaintiff as hearsay within hearsay; (3) payroll records of Amanda Daston, who was promoted instead of Plaintiff, for purposes of calculating damages, and the related summaries of the payroll records; (4) a summary of Plaintiff's earnings after her resignation; and (5) summaries of Plaintiff and Daston's work schedules for a period of a year-and-a-half prior the promotion. (Def. Decl. Supp. at 1-2).  The Court will consider each in turn.

#### a. Plaintiff's Testimony Regarding the Text Message Dispute

Defendant seeks to preclude Plaintiff from testifying that a dispute, memorialized in a text message exchange, between Plaintiff and an owner of FJSS was based on a complaint of racial discrimination or that the dispute was a protected activity that could not be the basis of an adverse employment action. (Def. Mem. at 2-3). Defendant argues that because the Court disposed of Plaintiff's retaliation claim in its Opinion & Order dated September 30, 2022 (*see* ECF No. 66), which found that Plaintiff's comments did not amount to a protected activity, testifying as such should be precluded. (Def. Mem. at 2). Plaintiff responds that preclusion would constrain her from speaking truthfully on the dispute and that, since the retaliation claim has been dismissed and is not for the jury to decide, the issue of protected activity is within bounds. (Pltf. Opp. at 3-4).

The Court preliminarily holds that Plaintiff may testify that the basis for her dispute was a claim of racial discrimination, but that Plaintiff may not testify that it constituted protected activity. Plaintiff must be able to accurately describe her reasoning and position underlying the dispute. To

allow Plaintiff to describe such conduct as "protected activity", in contravention of the Court's ruling on the matter, however, would "confus[e] the issues [and] mislead the jury." Fed. R. Evid. 403.

### b. Text Message Hearsay within Hearsay

Defendant seeks to preclude Plaintiff's Exhibit 8, a text message exchange between Plaintiff and Jill Mattiello (the "Plaintiff Exchange"), wherein Matiello sent Plaintiff a screenshot of a text message exchange between Matiello and Narvaez (the "Narvaez Exchange"), on the basis that it is hearsay within hearsay. (Def. Mem. at 3-4). The Narvaez Exchange contains Narvaez's recollection of certain remarks alleged to have been made by an owner of FJSS. (*See* Def. Decl. Supp, Ex. D). "Hearsay" is defined as an out of court statement introduced to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay within hearsay is admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

Plaintiff contends that the contested message may fall under certain exceptions to the rule against hearsay, including Fed. Rs. Evid. 803(a), present sense impression, 803(5), recorded recollection, and 807, the residual hearsay rule. (Pltf. Opp. at 5). Plaintiff further contends that a motion *in limine* should only exclude evidence when that evidence is "clearly inadmissible on all potential grounds." (*Id*. (citing *United States v. Ozsusamlar*, 428 F. Supp.2d 161, 164-65 (S.D.N.Y. 2006) (internal quotations omitted)).

A "present sense impression" is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Plaintiff correctly states that "precise contemporaneity is not required . . ." to qualify as a present sense impression. (Pltf. Opp. at 5 (citing *United States v. Ibanez*, 328 Fed. App'x 673, 675 (2d Cir. 2009). That case allowed for a delay of "several minutes" before the impression was made. *Ibanez*,

328 F. App'x at 676. Plaintiff contends that Narvaez's screenshotted message "was written at or near the time of the events. . ." and that, in any event, it could not have been sent any later than 10:16am on August 13, 2019. (*Id.*) At the earliest, the message could have been written some time on August 12, 2019. (*Id.*) Without more, that uncertainty in time between when the Narvaez spoke with the FJSS owner and when she recalled the exchange to Matiello is fatal. Therefore, without a more developed foundation for the Nardaez Exchange to have been made with sufficient contemporaneity, it may not qualify as a present sense impression.

A statement qualifies as a "recorded recollection" when it "is on a matter the witness once knew about but now cannot recall well enough testify fully and accurately; was made or adopted by the witness when the matter was fresh in the witness's memory; and accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). Plaintiff points to Narvaez's testimony that, in her view, meets all of the requirements for a recorded recollection. (Pltf. Opp. at 6). Even assuming, *arguendo*, the Narvaez Exchange does meet the requirements of a recorded recollection, Plaintiff fails to offer a basis for the Plaintiff Exchange to avoid the bar on hearsay. Without such a basis, the Plaintiff Exchange is itself precluded.

The residual exception for the rule against hearsay allows for statements to be admitted when "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it is made and evidence, if any, corroborating the statement; and [] it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Fed. R. Evid. 807(a). Evidence submitted under the residual exception must meet five requirements: (1) trustworthiness; (2) materiality; (3) probative importance; (4) the interests of justice, and (5) notice. *United States v. Griffin*, 811 Fed.

10

App'x 683, 686 (2d Cir. 2020) (citing *Parson v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).

Here, the statement is not "more probative on the point for which it is offered than any other evidence . . ." as, Plaintiff contends, the FJSS owner's statement "was repeated to others, including [] Matiello and [Plaintiff]." (Pltf. Opp. at 7). Recollection of such statements could then, presumably, be made and admitted under a separate rule of evidence and would be no less probative—particularly with respect to Matiello's recollection, given she had already resigned by the time the statement was made. (*See* Opinion & Order at 3-4, ECF No. 66). The Court also notes that Nardaez has at least once already recanted her recollection of the FJSS owner's statement, calling into question its trustworthiness. (*See* Def. Decl. Supp., Ex. G).

Accordingly, the Court preliminarily holds that Plaintiff's Exhibit 8 is inadmissible under the rule against hearsay.

### c. Daston's Income as a Comparator for Damages and the Related Summaries

Defendant contends that Daston's, the individual promoted over Plaintiff, paystubs are an improper comparator for Plaintiff's damages on the grounds that they include: (1) hours worked as a server in addition to hours worked as the general manager; (2) double shift pay, overtime, tips, and bonuses earned for "Daston's exceptional efforts and were not part of the base salary for the general manager;" and (3) "doing so assumes that Plaintiff would have had the desire and capacity to work as many hours as Daston did." (Def. Mem. at 4). Defendant argues that evidence of Plaintiff's later work at other restaurants indicate she would have been unable to work the hours that Daston did. (*Id*. at 5). Defendant further argues that the summary spreadsheet of Daston's earnings on grounds they were provided to counsel with limited time to review and that the 129 paystubs are not so voluminous as to require summary under Fed. R. Evid. 1006.

11

Defendant fails to provide a basis for excluding such information. If general managers at FJSS consistently, or not, also work as servers and receive additional pay for double shifts, overtime, tips, and the like, that is a factual issue to be determined at trial. Defendant also only offers conjecture that Plaintiff would have been unable to work the hours necessary to perform the role of general manager. Consequently, the Court preliminarily holds that Daston's paystubs are admissible. Moreover, the Court finds that the records are sufficiently voluminous as to make a summary acceptable under Fed. R. Evid. 1006 and that those summaries prepared by Plaintiff may be considered provided a proper foundation is laid, in addition to the paystubs, themselves.

### d. Summary of Plaintiff's Earnings after her Resignation from FJSS

Defendant objects to Plaintiff's summary of her earnings after resigning from FJSS because it does not include her unemployment earnings from 2020 and 2021 and thus may mislead or confuse the jury. (Def. Mem. at 6).

As discussed above, the Court has preliminarily held that Plaintiff's unemployment earnings are not admissible. Accordingly, Plaintiff's summaries need not include such information and may be introduced, provided a proper foundation is laid.

### e. Work Schedule Summaries

Defendant objects to summaries of Plaintiff and Daston's work schedules prepared by Plaintiff on grounds that they were only provided to counsel one day prior to the date on which the parties were to submit their joint pretrial order and, consequently, Defendant's counsel was unable to review the summaries for accuracies. (Def. Mem. at 6). Plaintiff has offered to remedy any accuracies Defendant discovers and, if the summaries are permitted, to reduce the summaries to "a handful of relevant pages." (Pltf. Opp. at 11).

The Court preliminarily holds that the summaries are permitted, provided a proper foundation is laid. Plaintiff is directed to submit her revised and reduced summaries to Defendant's counsel forthwith to review for accuracy.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* is DENIED in its entirety. In summary, the Court preliminarily holds that: (1) Plaintiff's unemployment benefits are not admissible, but that, in the event an award of damages is made at trial, those unemployment benefits received for dates Plaintiff is claiming back pay will be deducted from any such award; (2) that Plaintiff's objection to Defendant's proposed Exhibit W is moot; and (3) discussions between Defendant's counsel and current employees of Fuji Japanese Steakhouse Sushi Inc. prior to, and during, deposition sessions are protected under attorney-client privilege.

Defendant's motion *in limine* is DENIED, in part, and GRANTED, in part. In particular, the Court preliminarily holds that: (1) Plaintiff may testify that the basis for her dispute memorialized in the text message exchange was a claim of racial discrimination but that Plaintiff may not testify that it constituted a protected activity; (2) Plaintiff's proposed Exhibit 8 is inadmissible as hearsay within hearsay; (3) Amanda Daston's relevant paystubs, and the summaries prepared by Plaintiff, are admissible and may be considered together; (4) Plaintiff's proposed summary of her earnings may not include the unemployment benefits received by Plaintiff; and (5) that Plaintiff's summaries of Plaintiff and Amanda Daston's work schedules are admissible and, further, that Plaintiff is to provide Defendant with her revised drafts of those summaries forthwith.

The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 74 & 79.

Dated: November 17, 2023
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

14